### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

AMY L. HART                                                        **PLAINTIFF**

**v.**                                             **CAUSE NO.: 1:10CV92-SA-DAS**

**STARKVILLE FORD-LINCOLN-MERCURY, INC.**               **DEFENDANT**

### MEMORANDUM OPINION

Presently before the Court is a Motion for Summary Judgment [48] filed by Defendant Starkville Ford-Lincoln-Mercury, Inc. After reviewing the motion, response, rule, and authorities, the Court finds as follows:

### BACKGROUND

In April 2007, Amy Hart ("Plaintiff") began working as a service writer at Defendant's auto dealership in Starkville, Mississippi. Plaintiff was hired by and reported to Shane Orrick, the Service Manager, and her duties included greeting customers, writing up service requests, upselling service products to customers, managing service requests with shop technicians, answering the telephone, contacting customers regarding the vehicles, filing, and other administrative duties in the service shop.[1] At the time of Plaintiff's hiring, she was best friends with an individual named Renee Edwards, whose ex-spouse, Shawn Edwards, a body shop manager, worked with Plaintiff. Renee Edwards and Shawn Edwards, while already divorced, attempted to reconcile with one another, but such attempts failed in or around October 2008. Apparently, Shawn Edwards harbored animosity towards Plaintiff due to her friendship with his ex-spouse, Renee.

---

[1] Plaintiff appears to have been the only female working in the Service Department and the body shop.

According to Plaintiff, in the months prior to termination, she was subjected to sexual harassment by Shawn Edwards. Specifically, Plaintiff asserts that such harassment began in or around April 2009, and continued until June 2009. Plaintiff alleges that Edwards directly propositioned her for sex, that he sent her several pictures that he had taken of his genitals on his cell phone, and that he – both explicitly and implicitly – asked her to meet him during their lunch break to engage in sexual activities. Plaintiff further asserts that Edwards asked her when she was going to "to give him some," and he asked her to go inside the bathroom and take a picture of herself to send to him. Plaintiff avers that after she refused to respond to Edwards' sexual overtures, he became verbally hostile.[2]

On the day before Plaintiff was terminated, June 28, 2009, Plaintiff maintains that Edwards began texting her "disgusting" and hostile text messages. Due to this, Plaintiff apparently went to the Sheriff's department to press charges against Edwards. When Plaintiff arrived at work, she contends that she explained the situation to Shane Orrick (the Service Manager), showed him the text messages, and he told her to go to her desk and "just go to work." Plaintiff alleges that she asked Orrick to help her and asked him whether this would affect her job. According to Plaintiff, ten minutes later, Orrick came over to her desk and informed her that it was just "too much" and that they would have to let her go. Plaintiff's employment was terminated on June 29, 2009. Defendant maintains that Plaintiff's termination was due to poor work performance.

---

[2] More specifically, in her deposition testimony, Plaintiff states, "He went from wanting sex to understanding that he wasn't getting sex to being almost violent, only not physically."

Plaintiff filed this lawsuit on April 22, 2010, alleging claims for sexual harassment, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Defendant has moved for summary judgment, arguing that it is entitled to judgment as a matter of law as to all claims asserted by Plaintiff.

## LEGAL STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.[3] The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory

---

[3] The Court feels compelled to point out to Plaintiff that effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a), not 56(c). Rule 56(a) now states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION AND ANALYSIS

### A. Gender Discrimination

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not seek to prove her case with direct evidence, instead presenting alleged circumstantial evidence and analyzing her claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the McDonnell Douglas standard, Plaintiff must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001). Proof of disparate treatment can

establish the fourth element of the plaintiff's prima facie case. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005).

Once a plaintiff has made her prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer

gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

Plaintiff can establish a prima facie case of gender discrimination: she is a qualified female who was replaced by a male after her employment was terminated. As such, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. Here, Defendant asserts that Plaintiff was terminated due to poor work

performance. This articulated reason satisfies Defendant's burden of production; therefore, the burden shifts back to Plaintiff prove either that this proffered reason is pretext for discrimination or that Plaintiff's protected characteristic was a motivating factor for the decision. The Court finds that Plaintiff has satisfied her burden at the summary judgment stage.

Plaintiff initially attempts to show pretext by relying on a disparate treatment theory, pointing to Shawn Edwards as an alleged "comparator." See Perez v. Tex. Dep't of Crim. Justice, Institutional Div., 395 F.3d 206, 210 (5th Cir. 2004); see also Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001); Smith v. Wal–Mart Stores (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990). Disparate treatment occurs where an employer treats one employee more harshly than other "similarly situated" employees for "nearly identical" conduct. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009); Wallace, 271 F.3d at 221. However, Shawn Edwards is not an appropriate comparator under Fifth Circuit precedent. See Lee, 574 F.3d at 259–60 (providing that employees with different supervisors, different work responsibilities, or dissimilar violations are generally inappropriate comparators). It is undisputed that Plaintiff was employed as a Service Writer, whose job duties included, but were not limited to, greeting customers, writing and processing service orders, and performing various other administrative duties. It is also undisputed that Edwards was employed as the Body Shop Manager and worked in a different department than Plaintiff. Along the same lines, Plaintiff and Edwards did not report to the same supervisor nor have the same chain of command. Edwards, the body shop manager, reported to Chris Vickery, General Manager. Plaintiff, a service writer, reported to Service Manager, Shane Orrick, who

reported to Chris Vickery. Accordingly, Plaintiff fails to meet the Fifth Circuit's exacting standard of proving a similarly-situated comparator in order to establish pretext at the summary judgment stage.

Plaintiff also attempts to establish pretext by showing that Defendant's proffered explanation is false or unworthy of credence. This inquiry is focused on whether Defendant's explanation is "the real reason" for terminating Plaintiff's employment. Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003). Plaintiff must produce evidence, viewed in the light most favorable to her, that would permit a jury to believe that Defendant's proffered reason for firing her was not its true reason but simply pretext for a discriminatory reason. Id. Such rebuttal evidence, combined with the prima facie case, will suffice to create a genuine issue of material fact such that summary judgment is inappropriate. Machinchick v. PB Power, Inc., 398 F.3d 345, 351 (5th Cir. 2005); see also Reeves, 530 U.S. at 148, 120 S. Ct. 2097; Rachid, 376 F.3d at 307.

According to Defendant, Plaintiff was terminated for poor work performance and subpar work ethic. More specifically, Defendant asserts that Plaintiff was terminated for the following conduct, which allegedly occurred during her tenure as an employee with Starkville Ford: excessive personal use of her cell phone and Defendant's computer during working hours, tardiness, failure to properly file customer service tickets, failure to improve on upselling of services to customers, verbal complaints from customers regarding her attitude, and her involvement in a serious customer service issue where she failed to process a customer's service request. However, as Plaintiff points out, the Defendant had *never* written

Plaintiff up for these alleged poor work habits. In Orrick's deposition testimony, he testified as follows:

> Q:  How many times was she written up previous to being fired?
>
> A:  I wrote some documentation down on her once or twice.
>
> Q:  Right. **After the fact, right**?
>
> A:  **Yes, sir.**

Thus, the only documentation regarding Plaintiff's alleged poor work performance occurred *after* her termination – *not* during the two years while Plaintiff was employed with Defendant. See Laxton, 333 F.3d at 580–81; Vaughn v. Woodforest Bank, 2011 WL 6382033, at *6 (5th Cir. Dec. 21, 2011) (discussing the employer's failure to "formally document[]" any complaints and ultimately concluding that material facts were present as to whether the plaintiff had demonstrated pretext). Similarly, Defendant asserts that while Orrick was taking time off during the week of June 22, 2009, Plaintiff failed to process a customer's request for service. After Orrick returned from vacation on June 29, 2009 (the day of Plaintiff's termination), he apparently learned of this failure. According to Defendant, Orrick and Chris Vickery had a discussion and decided to terminate Plaintiff's employment. Plaintiff argues, however, that when Orrick was terminating her employment, he did not mention anything about the service ticket that was not written up. In fact, according to Plaintiff, there was no discussion about her work performance at all.[4] The Court concludes that, while a very close call, Plaintiff's rebuttal evidence, when viewed as a whole and in the light most favorable to

---

[4] Plaintiff was apparently terminated within ten minutes after allegedly complaining to Orrick about her male co-worker, Shawn Edwards. While Edwards does not meet the standard for a similarly-situated comparator, the Court notes that Edwards' employment was not terminated.

Plaintiff, casts doubt on Defendant's proffered non-discriminatory reasons for firing Plaintiff.[5]

See Reeves, 530 U.S. at 147, 120 S. Ct. 2097 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest . . . that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."). This evidence is sufficient to raise a genuine issue of material fact and, for this reason, Defendant's motion for summary judgment as to this claim is denied.[6]

**B. Sexual Harassment**

The United States Supreme Court recognizes two types of sexual harassment claims: (1) claims that are based on requests for sexual favors that result in adverse employment actions ("quid pro quo claims"); and (2) claims where bothersome attentions or sexual remarks create a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 633 (1998). Plaintiff asserts claims for both quid pro quo harassment and hostile work environment. The Court will consider each claim separately, beginning with quid pro quo.

---

[5] While Defendant aptly raises the so-called "same actor inference," the Court notes that this inference "is not irrebuttable." Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 421 (5th Cir. 2009).

[6] While this action may proceed at trial as a "mixed-motives" case, the Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. See Smith, 602 F.3d at 333.

*Quid Pro Quo*

"To establish a Title VII quid pro quo claim, a plaintiff must show that the acceptance or rejection of a *supervisor's* alleged sexual harassment resulted in a 'tangible employment action.'" Alaniz v. Zamora-Quezada, 591 F.3d 761, 772 (5th Cir. 2009) (quoting La Day v. Catalyst Tech., Inc., 302 F.3d 474, 481 (5th Cir. 2002) (emphasis added)). "'A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 481-82 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)). In addition, a plaintiff must show a "causal nexus" between the acceptance or rejection of the sexual advances and the tangible employment action. Alaniz, 591 F.3d at 772.

While Plaintiff asserts a claim based on quid pro quo harassment, Plaintiff cannot prove that Shawn Edwards had supervisory or decision-making authority over her employment. See, e.g., Alaniz, 591 F.3d at 772; Lutes v. Loni Corp., Inc., 2010 WL 1963170, at *2-3 (S.D. Ill. May 17, 2010) ("Indeed, the *quid* in the claim's name represents the power or leverage that an employer and/or supervisor holds over his subordinates . . . ."). The Court notes from the outset that Title VII provides no definition of the term "supervisor." Before the United States Supreme Court established the rule of employer liability in Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), the Fifth Circuit, as well as other circuit courts, made an effort to maintain a line between low-level supervisors who were the equivalent of co-workers and supervisors whose authority and

power was sufficient to make consequential employment decisions affecting the subordinate, such that the supervisor was effectively acting on the employer's behalf. In light of the courts' distinction between low-level supervisors (who are equivalent to co-employees for purposes of Title VII) and true supervisors, the question, then, is how much or what kind of authority must an individual possess to be a true supervisor. Cases subsequent to Faragher and Ellerth indicate that whether an individual is "a supervisor with immediate (or successively higher) authority" is dependent upon whether his authority was of a substantial magnitude. See Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 592 (5th Cir. 1998) (employee was victim's supervisor under Faragher and Ellerth where he had the authority to discharge her); Phillips v. Taco Bell Corp., 156 F.3d 884, 888 (8th Cir. 1998) (harasser, who was the store manager, was a supervisor based on the authority he had over the plaintiff); Lissau v. Southern Food Services, 159 F.3d 177, 179 (4th Cir. 1998) (the Ellerth and Faragher standard of liability applied where the harasser "could hire and fire sales representatives," such as the plaintiff). As the Court noted in Rosales v. City of Antonio, Texas,

> [I]t is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes of imputing liability to the employer.

2001 WL 1168797, at *7 (W.D. Tex. July 13, 2001).

In the present case, Plaintiff concedes in her deposition testimony that Orrick, and not Edwards, was her supervisor and that Edwards was not her boss. Moreover, Plaintiff has failed to otherwise present any *competent* summary judgment evidence that Edwards even

played any role in her termination. Plaintiff argues in her brief in opposition that "Shawn threatened to get Amy Hart fired if she would not have sex with him." However, this assertion is based on hearsay, as Plaintiff concedes she has no personal knowledge of such, instead stating that Edwards allegedly told one of Plaintiff's co-workers, Kirby Sherman, that he knew how to "get rid of" Plaintiff. See FED. R. CIV. P. 56 (c)(B)(4) (noting the need to "set out facts that would be *admissible in evidence*") (emphasis added). Plaintiff presents no other evidence that Edwards played a role in or caused her termination. Plaintiff also cannot demonstrate that there was a "causal nexus" between the *rejection* of Edwards' sexual advances and the employment action. See Alaniz, 591 F.3d at 772. Accordingly, the quid pro quo analysis is inapplicable here,[7] and Defendant is entitled to summary judgment as to Plaintiff's claim based on quid pro quo sexual harassment.

*Hostile Work Environment*

Plaintiff's claim for hostile work environment, however, falls on different footing. In order to establish a hostile work environment claim under Title VII, a claimant must show: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) respondeat superior. Jones v. Flagship Int'l, 793 F.2d 714, 719–20 (5th Cir. 1986). "To affect a term, condition, or privilege of employment, 'sexual harassment must be sufficiently severe *or* pervasive so as to alter the conditions of employment and create an abusive working environment.'" Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 330 (5th

---

[7] See Polly v. Houston Lighting & Power Co., 825 F. Supp. 135, 137 n.3 (S.D. Tex. 1993) (noting that "because the acts of harassment alleged in [Plaintiff's] Complaint were committed by [Plaintiff's] co-workers and not by his supervisors, the Complaint alleges only a hostile environment and not a quid pro quo sexual harassment claim").

Cir. 2009) (quoting <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002) (emphasis added)).[8]   To be actionable, the working environment must be objectively hostile or abusive. <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 611 (5th Cir.2005). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." <u>Id.</u> (citing <u>Harris</u>, 510 U.S. at 21-22, 114 S. Ct. 367).

Given the fact-specific nature of the inquiry, the Fifth Circuit's prior holdings in this context are instructive. In <u>Shepherd v. Comptroller of Public Accounts</u>, the court determined that the plaintiff could not withstand summary judgment on her hostile work environment claim where a male co-worker (1) told Shepherd that her elbows were the same color as her nipples; (2) told her that she had big thighs; (3) on several occasions attempted to look down her clothing; (4) often rubbed his hand from her shoulder to her wrist; and (5) twice patted his lap to indicate where she should sit.   <u>Shepherd</u>, 168 F.3d at 872-74. But, Shepherd also testified that the co-worker never propositioned her or asked her out and, that apart from the

---

[8] The Court notes that in certain instances in Defendant's motion for summary judgment, it states that Plaintiff must prove that the alleged sexual harassment was severe *and* pervasive.  This is not the correct standard. The Supreme Court has stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was severe *or* pervasive. <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986); <u>Harris</u>, 510 U.S. at 21, 114 S. Ct. 367; <u>Clark Cnty Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001); <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 786, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (quoting <u>Meritor</u>, 477 U.S. at 67, 106 S. Ct. 2399); <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 752, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); <u>see also</u> <u>Harvill v. Westward Communications, L.L.C.</u>, 433 F.3d 428, 434-35 (5th Cir. 2005); <u>Hostetler v. Quality Dining, Inc.</u>, 218 F.3d 798, 808 (7th Cir. 2000) ("Harassment need not be severe and pervasive to impose liability; one or the other will do.").

above instances the two had a friendly relationship at, as well as outside of, work. Id. at 872. Further, the conduct that Shepherd complained of took place over a period of almost two years. Id.

On the other hand, in Farpella-Crosby v. Horizon Health Care, the Fifth Circuit upheld a jury verdict granting relief on the plaintiff's hostile work environment claim. 97 F.3d 803 (5th Cir. 1996). In Farpella-Crosby, the plaintiff's boss made offensive comments two to three times a week. Id. at 806.  The comments centered around the plaintiff's alleged proclivity to engage in sexual activity. Id. at 805.  The boss would comment that "he knew what she liked to do" and would often inquire whether she had "got[ten] any" the night before. Id.  He also joked that the plaintiff "doesn't know how to use condoms," and in another instance made very crude sexual remarks about the smell emanating from her office. Id.  The court focused on the frequency and crudeness of the remarks, as well as the frequent inquiries about the plaintiff's sexual activity, and determined that this conduct was sufficiently severe, as well as pervasive, to create a hostile work environment, *even without evidence of propositioning or inappropriate touching*. Id. at 806; see also Donaldson v. CDB Inc., 2009 WL 1916466, at *8 (5th Cir. July 6, 2009) (relying on Farpella-Crosby, finding genuine issues of material fact present based on "sexually-suggestive comments" made over a five-month period, and noting that "[p]hysical touching is not a requirement in a hostile-work-environment claim . . . ."); Alaniz, 591 F.3d at 772 (finding the facts legally sufficient to support a hostile work environment jury verdict when the plaintiff was propositioned, endured comments about her physical appearance and address, and the conduct occurred over *only 32 days*); McQuatters v. Aaron's Inc., 2011 WL 4372362 (W.D. Tex. Sept. 19, 2011) (sexually-suggestive comments

made over a *two-month period* enough to create material facts precluding summary judgment).

Here, unlike the <u>Shepherd</u> case, Plaintiff was directly propositioned for sex. Edwards also sent her pictures of his genitals, and Plaintiff was similarly asked to take and send pictures to Edwards. Plaintiff also maintains that this alleged harassment continued both at work and at home, while she was off work. These comments, propositions, and pictures were not *spread out* over a two-year period, as was the case in <u>Shepherd</u>. Instead, they occurred within two months, which is much more similar to <u>Farpella-Crosby</u> and <u>Alaniz</u>.

Defendant, however, makes a two-fold argument contending (a) that the alleged sexual harassment was not "unwelcome," and (b) that the harassment was not "based on" Plaintiff's gender. As to the "unwelcome" argument, Defendant contends that because Plaintiff was no "shrinking violet," the alleged sexual harassment must have been welcome. The Court cannot hold such as a matter of law. Part of Defendant's argument is based on the fact that Plaintiff used curse words and, on one occasion, wore revealing clothing to work. The Court more than hastens to say that surely this conduct does not, as a matter of law (or otherwise), offer a blanket license to engage in sexual harassment. Further, it is quite a stretch to say that such alleged harassment was, as a matter of law, "welcome" in a scenario when Plaintiff rejected Defendant's propositions, complained to her co-worker and supervisor, *and* went to the police station to press criminal charges.

As to Defendant's argument concerning whether the harassment was "based on" Plaintiff's gender, Defendant argues that Plaintiff was subjected to such alleged harassment because Shawn Edwards was angry with Plaintiff because she was friends with his ex-spouse

Renee Edwards. While the record evidence appears to demonstrate that Shawn Edwards was indeed angry with Plaintiff, his comments, pictures, and propositions to engage in sexual activity were still certainly "sexual in nature." See Cherry v. Shaw Coastal, Inc., 2012 WL 147867, at *4 (5th Cir. Jan. 19, 2012) (noting that the plaintiff presented evidence to support the conclusion that the harassment was "sexual in nature"). Accordingly, Plaintiff has presented a genuine dispute as to whether she was subjected to a hostile work environment.

Yet, the analysis does not end here. The Defendant contends that it can establish the Faragher/Burlington affirmative defense. The Faragher/Burlington defense allows an employer that is subject to vicarious liability due to a hostile work environment claim to avoid liability by showing: "(1) the employer exercised reasonable care to prevent and correct promptly any sexually-harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm or otherwise." Donaldson v. CDB, Inc., 335 F. App'x 494, 500 (5th Cir. 2009). The Court addresses this conjunctive defense in reverse.

First, the Court concludes that material facts exist concerning whether Plaintiff failed to take advantage of any preventive or corrective opportunities provided by the employer. Defendant asserts that it did not know, and had no reason to know, of any alleged harassment. In stark contrast, however, Plaintiff asserts that she informed Shane Orrick, her supervisor, as well as Bobby Williams, the shop foreman, about the alleged harassment. Specifically, in her deposition testimony, Plaintiff contends as follows:

> Q: Am I correct in understanding that you never talked to Shane Orrick about any concerns that Shawn Edwards had made inappropriate sexual comments to you or sexual advances?

A:      No at that time, no.

Q:      Okay. At any time, did you –

A:      Yes, I did.

Q:      -- have a conversation with Shane Orrick regarding that?

A:      Yes, I did.

Q:      Tell me about that conversation.

A:      That is going to be after – after the Bobby conversation, but I don't know how far after the Bobby conversation. The Bobby conversation, I'm going to say, happened three to four weeks before me being terminated. In between then and me being terminated is when Shane found out. And then he was told against the day I was terminated, then minutes before I was terminated. So, a month, and then maybe two weeks, and then again ten minutes before I was terminated.

Q:      Okay. I want to know the first time you had a conversation personally, yourself, with Shane Orrick in which you told Shane that Shawn Edwards had done anything inappropriate of a sexual nature.

A:      Okay. That's going to be about two weeks or so, a few weeks after Bobby and I spoke. And the day that I spoke with Shane, I was upset. I was ill. And that conversation did not go over well. I told him that he was bothering me and they needed – this [sic] going to sound bad, but I was basically telling him job, that he needed to say something. That Shawn had been bothering me, I was tired of it and let him know that I was going to do something about it if he didn't.

Q:      . . . . What did you tell Shane Orrick that Shawn Edwards was doing that was bothering you?

A:      Messaging me; trying to get me to have sex with him; harassing me at work; even brought up that he witnesses that morning where Shawn had met me at the time clock.

The Court must credit Plaintiff's testimony, at the summary judgment stage, that she informed

Shane Orrick, on more than one occasion, about the alleged harassment.

The Court next addresses whether the employer exercised reasonable care to prevent and correct promptly any sexually-harassing behavior. Plaintiff contends that she reported the sexual harassment, on multiple occasions, to both Williams and Orrick, and they did not promptly correct the behavior. More specifically, Plaintiff asserts that, when she informed Orrick of the harassment, he told her to just "stay away" from Edwards and "stay on her side of the building." The Court additionally notes that it appears that Defendant did not have a sexual harassment policy in effect. Defendant, in contrast, asserts that after Orrick spoke with Edwards, the complained-of harassment ceased. But, Plaintiff was terminated shortly after Orrick appears to have spoken with Edwards and, even after Orrick's conversation with Edwards, Plaintiff still went and filed criminal charges against Edwards. The evidence at trial may very well demonstrate that, despite the apparent lack of any sexual harassment policies, avenues to file complaints, or policies in place to prevent such harassment, the Defendant promptly corrected the behavior. But, given the record, the Court is unable to conclude such as a matter of law at the summary judgment stage. Accordingly, the evidence taken as a whole creates fact issues as to whether Plaintiff was subjected to a hostile work environment. This case presents conflicting descriptions of a muddled set of facts, and the Court may not make credibility or factual determinations at this stage. For this reason, Defendant's summary judgment motion as to this claim is denied.

## C. Retaliation

The McDonnell Douglas test is applicable to Title VII unlawful retaliation cases. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a) by showing that: (1) she

engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009).

Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, plaintiff must then offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). See Rachid v. Jack in the Box, Inc, 376 F.3d 305, 312 (5th Cir. 2004); Smith v. Xerox Corp., 602 F.3d 320, 330-33 (5th Cir. 2010).

Here, the Court concludes that, when viewing the evidence in the light most favorable to the nonmovant, Plaintiff has met her burden at this stage in litigation of demonstrating a prima facie case. Plaintiff contends that both two weeks before she was terminated, as well as the day of her termination, she told her immediate supervisor, Orrick, that she was being sexually harassed. Her termination undisputedly constitutes an adverse employment decision. As to the third prong, in order to establish a 'causal link' as required by the third prong of the prima facie case, a plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie

case of retaliation. <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 562 n.28 (5th Cir. 2007);

<u>Swanson v. Gen. Srvs. Admin.</u>, 110 F.3d 1180, 1188 (5th Cir. 1997). However, if the only

evidence of a prima facie causal link is "mere temporal proximity between an employer's

knowledge of protected activity and an adverse employment action," then "the temporal

proximity must be very close." <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74,

121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) (citations and internal quotation marks

omitted) (citing with approval cases holding that three and four-month gaps between an

employer's knowledge of a protected activity and an adverse employment action are

*insufficient* and too long, standing alone, to establish a prima facie causal link).  Even beyond

temporal proximity alone,

> The courts have [also] sketched an outline of indicia of causation in Title VII
> cases, because causation is difficult to prove. Employers rarely leave concrete
> evidence of their retaliatory purposes and motives. For example, in <u>Jenkins</u>, the
> court looked to three factors for guidance in determining causation. First, the
> court examined the employee's past disciplinary record. Second, the court
> investigated whether the employer followed its typical policy and procedures
> in terminating the employee.[9] Third, it examined the temporal relationship
> between the employee's conduct and discharge. <u>Jenkins</u>, 646 F. Supp. at 1278.
> This analysis is highly fact specific, as the Supreme Court recently noted. <u>St.
> Mary's</u>, 509 U.S. at [524], 113 S. Ct. [2742] ("the question facing triers of fact
> in discrimination cases is both sensitive and difficult.") (quoting <u>United States
> Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716, 103 S. Ct. 1478,
> 1482, 75 L. Ed. 2d 403 (1983)).

<u>Nowlin v. Resolution Trust Corp.</u>, 33 F.3d 498, 507-09 (5th Cir. 1994). Here, because the

Court finds the close timing alone (two weeks and the day of) minimally sufficient for

purposes of the motion at bar to establish a prima facie case, the Court need not address the

other factors discussed in <u>Nowlin</u>.

---

[9]  It appears that Starkville Ford does not have a policy manual.

After concluding that, for purposes of summary judgment, Plaintiff has presented a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the employment action. Defendant's reason for Plaintiff's termination is her alleged subpar work performance.  This articulated reason satisfies Defendant's burden of production.   As such, in order to survive summary judgment, Plaintiff must offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). According to the Fifth Circuit, "[a] plaintiff can only avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" Nunley v. City of Waco, 2011 WL 3861678, at *5 (5th Cir. Sept. 1, 2011) (quoting Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 129 (5th Cir. 2011)). Evidence is "substantial" if it is of a quality and weight such that "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Id.

In Nunley, the Fifth Circuit addressed retaliation post- the court's decision in  Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010), where the court held that the Price Waterhouse "mixed motive" framework applies to Title VII retaliation cases, and a plaintiff may show that a protected activity was a "motivating" or "substantial" factor. The Fifth Circuit in Smith also dispensed with the previous requirement that a plaintiff offer direct evidence of retaliation in order to proceed on the mixed-motive theory. The plaintiff in Nunley, relying on the Smith decision, argued that a Title VII retaliation claim need only offer evidence that retaliation was

a factor, i.e., that the City had "mixed motives," and such evidence may be circumstantial.

The Fifth Circuit, responding to such an argument, stated as follows:

> But as we explained in Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996), there are different tests for causation within the McDonnell Douglas framework—the initial "causal-link" required for making out a prima facie case, and the "but for" causation required after the employer has offered a legitimate, non-discriminatory justification. Id. at 305 n.4 ("At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a causal link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly. . . . The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent."). Indeed, the Court's opinion in Xerox affirms that the Price Waterhouse mixed-motive approach as applied in the retaliation context preserves an employer's ability to escape liability by refuting but for causation. Xerox, 602 F.3d at 333 ("[T]he mixed-motives theory is probably best viewed as a defense for an employer. This 'defense' allows the employer—once the employee presents evidence that an illegitimate reason was a motivating factor, even if not the sole factor, for the challenged employment action—to show that it would have made the same decision even without consideration of the prohibited factor." (emphasis added) (footnote and internal quotation marks omitted)); see also Manaway v. Med. Ctr. of Southeast Tex., 430 Fed. Appx. 317 (5th Cir 2011) ("The burden then shifts back to the employee to 'prove that the protected conduct was a 'but for' cause of the adverse employment decision.'" (quoting Hernandez, 641 F.3d at 129)). Thus, our decision in Xerox did not dispense with this final "but for" requirement for avoiding summary judgment.

Nunley, 2011 WL 3861678, at *5.[10]

As the Court noted above, Plaintiff has never been written up for her alleged subpar work habits. In Orrick's deposition testimony, he testified as follows:

Q:     How many times was she written up previous to being fired?

---

[10] In short, and according to Nunley, the only thing the mixed-motive analysis does is increase the bar for a defendant to reach before the ultimate burden of proving but-for causation reverts to the plaintiff.

A:    I wrote some documentation down on her once or twice.

Q:    Right. **After the fact, right**?

A:    **Yes, sir.**

Thus, the only documentation regarding Plaintiff's alleged poor work performance occurred *after* her termination – *not* during the two years while Plaintiff was employed with Defendant. Similarly, Defendant asserts that, while Orrick was taking time off during the week of June 22, 2009, Plaintiff failed to process a customer's request for service. After Orrick returned from vacation on June 29, 2009 (the day of Plaintiff's termination), he apparently learned of this failure. According to Defendant, Orrick and Chris Vickery had a discussion and decided to terminate Plaintiff's employment.  Plaintiff argues, however, that when Orrick was terminating her employment, he did not mention anything about the service ticket that was not written up. In fact, according to Plaintiff, there was no discussion about her work performance at all. Instead, Plaintiff asserts that, when Orrick was terminating her employment, he told her that this is just "too much."  This alleged "too much" remark was made within ten minutes after Plaintiff allegedly reported to Orrick that she was being sexually harassed by Edwards and had just filed criminal charges. In its reply brief, Defendant asserts: "Plaintiff's contention that Orrick said this is 'too much,' which he does not recall saying, could certainly reference Plaintiff's poor performance and lack of commitment to her job."  The Court agrees that this statement allegedly made by Orrick "could" indeed be a reference to Plaintiff's work performance.  However, it "could" also just as easily be construed as a reference to Plaintiff's complaints of harassment.  The Court cannot, at the summary judgment stage, weigh the evidence and make credibility determinations; instead, what inferences should be drawn from

the record depend on determinations best left to the trier of fact. Accordingly, disputes of material facts exist, and summary judgment is denied as to Plaintiff's retaliation claim.[11]

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. The motion is granted as to Plaintiff's claim for quid pro quo sexual harassment. The motion is denied as to claims for gender discrimination, hostile work environment, and retaliation.


So ordered on this, the _9th__ day of ___February_____, 2012.




**/s/   Sharion Aycock_____**
**UNITED STATES DISTRICT JUDGE**

---

[11] While this action may proceed at trial as a "mixed-motives" case, the Court need not decide at this juncture whether this case is properly labeled a "pretext" case or a "mixed motives" case. See Smith, 602 F.3d at 333.